UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | |
|---|---|
| LILIANA FELICIANO, | : |
| | : Civil Action No. |
| Plaintiff, | : |
| -against- | : **COMPLAINT** |
| | : (Plaintiff Demands |
| | : A Jury Trial) |
| THE CITY OF NEW YORK AND | : |
| THE NEW YORK CITY DEPARTMENT | : |
| OF CORRECTIONS, CAPTAIN TANYA | : |
| JONES (Individually And In Her Respective | : |
| Capacity As An Acting Officer of the New York | : |
| City Department of Correction), | : |
| NILDA MOLINA (Individually And In Her | : |
| Respective Capacity As An Acting Officer of the | : |
| New York City Department of Correction Union | : |
| and Members of the New York City Department | : |
| of Correction) and LIZZETTE MALDONADO | : |
| | : |
| Defendants. | : |

----------------------------------------------------------------X

PLAINTIFF, LILIANA FELICIANO ("hereinafter "PLAINTIFF" or "PLAINTIFF

FELICIANO), as and for her Complaint (the "Complaint") against DEFENDANTS THE

CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS,

CAPTAIN TANYA JONES, NILDA MOLINA and LIZZETTE MALDONADO sets forth

and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

   §1331 in that the action, involves federal questions, because the causes of action

   asserted herein arise in part under Title VII of the Civil Rights Act of 1964, as

   amended 42 U.S.C. 200 Seq. ("Title VII").  This Court has jurisdiction over the

   related state law claims herein asserted pursuant to 28 U.S.C. §1367, *Gibb*, 38 U.S.

1

715 (1966), and the laws of the State of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, and retaliated against by Plaintiff's former employer on the basis of gender, race and retaliation in accordance with the applicable principles of pendent jurisdiction.

2. Plaintiff's further complaints are pursuant to the laws of the State of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, and conductively and constructively discharged by Plaintiff's former employer on the basis of gender, race and retaliation.

3. Venue properly lies in the Eastern District in which a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of property that is subject of the action is situated in accordance with 28 U.S. Code §1391 (b)(2).

## JURY DEMAND

4. Plaintiff demands a trial by jury.

## PARTIES

5. PLAINTIFF is a Latin-American woman who is a resident of the State of New York in the County of Nassau.

6. At all times material, DEFENDANT The City of New York is a municipality with subsidiary agencies that operates in all five boroughs of the City of New York. The City of New York Law Department is located at 100 Church St, New York, NY 10007.

7. At all times material, DEFENDANT The City of New York Department of Corrections (hereinafter referred to as "DOC" or "DEFENDANT") is a municipal corporation, which operates under the auspices of the City of New York. The DOC

2

is incorporated in the State of New York with their headquarters located at 75-20 Astoria Blvd., East Elmhurst, NY 11370.

8.  At all times material, DEFENDANTS conduct business in the State of New York.

9.  DEFENDANTS' TANYA JONES (hereinafter also referred to as DEFENDANT JONES and/or "DEFENDANT JONES") was and is an individual residing in the State of New York.

10. At all times material, DEFENDANT JONES was and is a supervising employee with the DOC.

11. At all times material, DEFENDANT JONES had direct supervisory authority over Plaintiff Feliciano regarding her employment, which included but was not limited to the ability to hire, terminate and direct the daily job performance duties of the Plaintiff, along with other consequential employment actions.

12. DEFENDANTS' LIZZETTE MALDONADO (hereinafter also referred to as DEFENDANT MALDONADO and/or "DEFENDANT MALDONADO") was and is an individual residing in the State of New York.

13. At all times material, DEFENDANT MALDONADO was and is a Correctional Officer with the DOC.

## PROCEDURAL HISTORY

14. On or about April 6, 2021 Plaintiff filed a complaint with Equal Opportunity Commission.

15. On or about July 21, 2021, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the respondent(s) under federal laws in federal court.

16. This lawsuit is being filed within receipt of the (90) day EEOC Right to Sue provision.

17. On or about November 25th, 2020, via Departmental email, Plaintiff submitted an

EEO ("Equal Employment Office" of the DOC) Formal Complaint against Defendant Jones # 1428 to Ms. Florina Getman, who was at the time Acting Equal Employment Opportunity Officer.

18. On or about November 30th, 2020, Plaintiff received via Departmental email, a notification from Rodriguez Virginia on behalf of Ms. Florina Getman acknowledging receipt of Plaintiff's complaints.

19. On or about December 1st, 2020, Plaintiff received confirmation from Equal Employment Opportunity Specialist Barnes Melani that she was in receipt of Ms. Feliciano's complaint and requested an intake meeting.

20. On or about December 1st, 2020, Plaintiff filed additional information for a formal Equal Employment Opportunity Complaint with assistance from Specialist Barnes Melani.

21. On or about December 4th, 2020, Plaintiff had a telephone conference with Specialist Barnes Melani at the Equal Employment Opportunity Unit at 75-20 Astoria Blvd, Suite 390, East Elmhurst, N.Y, 11370.

22. It was then determined that there were valid grounds for an EEO discrimination complaint based on Plaintiff's race and gender.

23. Plaintiff was instructed by Specialist Barnes Melani to file a formal complaint with her office.

24. On or about December 4th, 2020, Plaintiff re-submitted her Equal Employment Opportunity complaint with Specialist Barnes Melani as per Ms. Melani's instructions.

25. On or about December 8th, 2020, Specialist Barnes Melani confirmed with Plaintiff that she received Plaintiff's Equal Employment Opportunity Complaint.

26. On or about December 9th, 2020, Plaintiff received an email of acknowledgment from Equal Employment Opportunity Attorney Investigator Triana Graciela, who had been assigned to Plaintiff's EEO Case- NO: 20200139.

27. On or about December 10th, 2020, Plaintiff amended her complaint to include further claims of retaliation by Defendant Jones that occurred on December 9th, 2020, the circumstances of which are contained herein.

28. On December 11th, 2020, Attorney Investigator Triana Graciela acknowledged and added Ms. Feliciano's claim of retaliation for the December 9th, 2020 incident.

29. On or about December 14th, 2020, Plaintiff again amended her complaint to include further retaliation from Defendant Jones # 1428.

**FACTS**

30. At all times material, Defendant Jones discriminated against the Plaintiff on the basis of her gender and race by consistently belittling her and alluding to her race-based inferiority.

31. Plaintiff Feliciano was constantly targeted and discriminated against on the basis of her gender and Hispanic race/national origin.

32. This disparate treatment under Defendant Jones' supervision caused the Plaintiff to suffer undue hardship and unjust penalties.

33. Plaintiff has been employed as a Correction Officer for the New York City Department of Corrections since June 2nd, 2005.

34. Throughout the course of her 16-year employment, Plaintiff has worked tirelessly to demonstrate herself as an exemplary employee.

35. Before Plaintiff was subjected to discriminatory and retaliatory mistreatment complained of herein, Plaintiff maintained an excellent attendance record with zero

absences and lateness.'

36. Similarly, before Plaintiff's complaint about illegal discrimination and retaliation, Plaintiff had never been disciplined at the DOC Queens Detention Center.

37. The discriminatory and retaliatory treatment that Plaintiff has suffered began in November of 2020, starting with her work supervisor, Defendant Tanya Jones.

38. For example, the DOC has a variant of the uniform that can be worn depending on the particular job assignment. Defendant Jones would allow male Officers to walk around wearing cargo pants, a plain non-DOC t-shirt and baseball caps.

39. However, Defendant Jones would treat the Plaintiff disparately by threatening the Plaintiff that if she wore the Department-authorized polo/golf shirt, Defendant Jones would write the Plaintiff up with disciplinary charges for violation of the uniform policy.

40. However, Officer Washington shield # 2729 was allowed by Defendant Jones to break the Uniform policy without any repercussions. Defendant Jones discriminated against the Plaintiff based on her gender since the above is just one of many examples of disparate treatment.

41. On or about November 19th, 2020, there was sprinkler activation inside Central Bookings which Defendant Jones ordered the Plaintiff to clean up without the assistance of any work detail.

42. The sprinkler activation had created a hazardous work environment with slippery conditions that extended from the courthouse entrance around and up to the NYPD entrance.

43. Plaintiff informed her Supervisor, Defendant Jones, that she needed assistance in the cleanup due to the extent of damage and sheer volume of water.

44. Instead, Defendant Jones insisted that Plaintiff "make use" of the wet vacuum which, at best, was held together with duct tape.

45. Ultimately, Defendant Jones ordered African American male officers to assist the Plaintiff with the clean-up. However, all of these officers refused to comply with Defendant Jones' instructions to assist Plaintiff and none of them suffered any repercussions or were subjected to any disciplinary actions for failing to abide by Defendant Jones' directive.

46. On or about November 25th, 2020, via Departmental email, Plaintiff submitted an EEO Formal Complaint against Defendant Jones # 1428 to Ms. Florina Getman, who was at the time Acting Equal Employment Opportunity Officer.

47. Plaintiff has respectfully requested the revision of the Post Description for the following post; 738 .C. Sanitation and post 352 Sanitation/ Food Service; numerous times since March 2, 2020 to include daily job assignment for each individual post.

48. Plaintiff has requested said job descriptions in order to have clarification of the post duties due the inconsistent, unfair, and unequal assignment distribution from supervisor Defendant Jones #1428.

49. On a certain occasion, Plaintiff has also been told by Personnel employees such as Officer Lesane C., shield # 8136, to "wait for the new administration" to get any requested post description.

50. Personnel employees situated within the command are responsible for the handling of all scheduling of training, job assignments, personal document, payroll, disciplinary record and so forth for all the employees/members of service assigned to the command.

51. Defendant Jones allowed Officer Boucher, a male officer, Shield # 10795, who is

7

assigned to 352 Sanitation/ Food Service, to arrive at the facility late on a daily basis without the submission of late slips or any other disciplinary action.

52. Defendant Jones allowed male officers to assume their post at their liking while simultaneously assigning the Plaintiff to their post duties- which included executing the meal schedule for inmates at Central Bookings, conducting the sanitation at Central Bookings food service area for both male and female new admissions and completing the food service logbook.

53. On or about December 9th, 2020, at approximately 4:00 PM, Operation Supervisor Defendant Jones #1428 ordered the Plaintiff to report to Central Control although she was already *en* route to conduct a meal relief per Defendant Jones's previous order.

54. Plaintiff, without delay, reported to the Control Room at which point Defendant Jones approached the Control window and stated to the Plaintiff: **"Why are you being so evil?"** This unbecoming conduct took place in front of the Control Room Officer, Officer Hammond.

55. Plaintiff then responded to Defendant Jones that she was just conducting the meal relief as ordered. It is apparent Defendant Jones only summoned Plaintiff to the control room to antagonize her regarding the recently filed EEO Complaint and for no other legitimate, non-retaliatory reason.

56. After the completion of her meal relief, Plaintiff proceeded to her assigned post to conduct sanitation as well as the required enhanced sanitation as per the recently instituted Covid -19 protocols.

57. On or about December 10, 2020, at approximately 7:00 PM, Defendant Jones ordered the Plaintiff to conduct two additional meal reliefs of Job Post 347A; referred to as Pen Security "A" and Job Post and 347B; referred to as Pen Security "B".

58. These additional tasks were assigned on top of her own meal relief assignment. Upon information and belief, no similarly situated male offers were assigned the aforementioned additional tasks.

59. Defendant Jones blatantly retaliated against the Plaintiff for submitting a protected complaint.

60. Plaintiff has been assigned to her particular schedule for approximately three years and specifically within sanitation since July 5th, 2019. Plaintiff has never had to conduct any meal relief assignments until Defendant Jones assumed authority and notably, in temporal proximity to Plaintiff's protected complaints.

61. Meal reliefs are not part of the Sanitation Job Post, yet Defendant Jones insisted on assigning Plaintiff to two different posts, in order to further discriminate and retaliate against her.

62. She would on occasion, similarly assign Officer Boucher Geddes, a black male Officer (Shield # 10795) to meal relief as a pretext to cover herself for her harassment towards Plaintiff.

63. In fact, Plaintiff overheard Defendant Jones stating that she was falsely logging both names; the Plaintiff's and Officer Boucher's name in the book as a pretext to cover herself for her harassment towards Plaintiff.

64. Defendant Jones would instruct Officer Boucher separately that he did not actually have to perform it. Thus, despite the assignment itself, Officer Boucher was not subjected to the same poor and unlawful treatment as the Plaintiff.

65. The EEO has been provided with copies of these log-book entries.

66. Defendant Maldonado, who is Defendant Jones' subordinate and friend, on numerous occasions threatened the Plaintiff in the female locker room that if the Plaintiff did

not withdraw the complaints against Defendant Jones, Officer Maldonado would file complaints against the Plaintiff.

67. In fact, Defendant Maldonado went ahead and filed said frivolous complaints against the Plaintiff.

68. These false allegations are currently pending and are also under investigation.

69. On or about December 14th, 2020, at approximately 4:00 PM, Administrative Supervisor Defendant Edwards #1675 issued the Plaintiff a Department Of Correction Intradepartmental memorandum requesting an ordered report.

70. On or about December 15th, 2020 Plaintiff, in close vicinity to Defendant Jones, also heard Defendant Jones stating to Control room Defendant Maldonado # 10219 "**[i]t's not what you know, it's who you know in this department. I am going to teach her a lesson. I am going to speak to Chief Pressley to have her transferred.**"

71.  Plaintiff personally heard this exchange as she was returning facility equipment and standing near the control room. Defendant Jones and Defendant Maldonado were unable to see Plaintiff until she approached the window and knocked on it. It was only after that moment that Defendant Jones and Defendant Maldonado stopped their conversation.

72. On or about December 16th, 2020, further incidents involving other officers occurred.

73. On or about December 19th, 2020, at approximately 7:00 PM, Plaintiff confronted Defendant Molina with a Union issue. Defendant Nilda Molina, Shield # 15935, is the Union Representative for the Queens Detention Center.

74. Plaintiff wanted to exercise her contractual right to file a complaint against the Union for failing to provide her with assistance or representation in the matter of her discrimination claims against Defendant Jones.

75. Defendant Molina told the Plaintiff that she is <u>busy</u> and **"Doesn't have time for frivolous complaints."** At the time there were no other delegates available, and Plaintiff felt helpless in seeking redress from her department.

76. A couple of hours later Defendant Molina confronted Plaintiff into the locker room with an attitude asking **"What? what do you want me to do?"**

77. Plaintiff was then forced to communicate with the Executive Director of the Labor Relations Board Maria Guccione and the Corrections Officer Benevolent Association President Boscio Benny regarding Union Delegate Defendant Molina's refusal to assist Plaintiff with her Union issue.

78. On or about December 17, 2020, Executive Director Maria Guccione responded to Plaintiff stating **"[t]his matter should be addressed to COBA President, Benny Boscio, who is already included on your email".**

79. On or about December 17, 2020, Attorney Investigator Triana Graciela acknowledged and added Plaintiff's claims of retaliation to include the incidents of December 14th, 2020, involving Union Delegate Defendant Molina.

80. On or about December 18, 2020, Plaintiff was made aware that Defendant Jones was actively creating a hostile work environment for Plaintiff by spreading rumors and telling other Members of service about her Equal Employment Opportunity complaint against Defendant Jones.

81. Upon information and belief, Defendant Jones tried to persuade officers into "taking sides" by claiming that Plaintiff is placing false allegations against them.

82. Specifically, Officer Alejandro Waldo, Shield # 16113, who also works in the Sanitation department, approached the Plaintiff and stated that Defendant Jones was going around the building telling everyone about the EEO complaint that Plaintiff

filed against her and that Defendant Jones specifically stated to Officer Waldo: **"[b]ecause of her (PLAINTIFF) you now have to do all this work, since she wanted to complain about the sanitation and put EEO complaints against me".**

83. On or about December 19th, 2020, Plaintiff amended her complaint to further include these incidents of retaliation by Defendant Jones, as told to Plaintiff by Officer Waldo on December 18th, 2020.

84. On or about December 21, 2020, Attorney Investigator Triana Graciela acknowledged and added to Plaintiff Feliciano's complaint the new claims of retaliation to include details from the December 15th, 2020, incident.

85. Ms. Graciela then stated to Plaintiff that "[a]s it stands, this is your third complaint of retaliation, in addition to your original complaint of gender and racial discrimination. Please note that additional claims of discrimination will delay the investigation of your complaint".

86. On or about December 30th, 2020, Defendant Jones approached the Plaintiff and inquired whether Plaintiff was assigned a work detail. Plaintiff informed her that she was not.

87. Defendant Jones then ordered the Plaintiff to take her meal at 4:30 PM. At this point, Plaintiff attempted to speak with Defendant Miller, Shield # 1654, who was the Operation Supervisor at that time. Defendant Jones promptly got on the radio and called the Administration leader Captain Edwards, Shield #1675, to report to the Staff kitchen.

88. Confronted with this ambush, Plaintiff requested her union delegate to be present and all three supervisors denied her to have representation or a witness to their conversation.

89. Plaintiff then spoke to Captain Edwards separately and requested for Defendant Jones to refrain from harassing her further.

90. Captain Edwards addressed Defendant Jones who then stormed out of the kitchen area towards the locker rooms and in Plaintiff's way in an irate manner yelling: **"I don't care how many complaints she writes against me! They are not going anywhere! She doesn't know who the fuck she is fucking with!"**

91. As Defendant Jones looked as if she were to tackle the Plaintiff, the Plaintiff moved backwards towards Captain Edwards and Defendant Miller asked the Plaintiff **"Why did you move from where you were standing?"**

92. Before Plaintiff could respond to Defendant Miller; Defendant Jones came from behind the Plaintiff and assaulted the Plaintiff.

93. Defendant Jones was yelling very loudly in a confrontational manner while she swung her hands back and forth as she rushed at Plaintiff from behind, violently attacking her. Both Plaintiff Edwards and Defendant Miller had to grab and hold Defendant Jones back and eventually removed Defendant Jones to her locker room to calm her down, as she continued to yell and scream at the Plaintiff.

94. The above actions taken by Defendant Jones left the Plaintiff in shock and horror.

95. Plaintiff was then taken off her assigned job post and re-assigned from her sanitation post to central bookings main desk which she assumed after she was dismissed by Defendant Miller at approximately 4:00 PM, as Defendant Jones #1428 had already replaced another member of service to Plaintiff's previously assigned post.

96. On or about December 31st, 2020, Plaintiff requested Attorney Investigator Triana Graciela assistance with her requested transfer to the Administrative Supervisor at Queens Court.

97. Plaintiff believed that it would be beneficial to her as it limits her interactions with Defendant Jones until the investigation was completed.

98. Captain Edwards did not appear to have any opposition towards Plaintiff being temporarily assigned to the Central bookings B-post but stated that Plaintiff needed approval from Attorney Investigator Triana Graciela's office.

99. On or about December 30th, 2020 at approximately 3:15 PM Defendant Jones # 1428 ordered the Plaintiff in the presence of another employee to take a meal at 4:30 PM. Plaintiff asked Defendant Jones for clarification of her duties for the day, at which point Defendant Jones immediately called Captain Edwards on the radio to report to the staff kitchen. The purpose was to write-up the Plaintiff for refusal to take a meal break at 4:30.

100.    At no time did the Plaintiff refuse to take meal at 4:30PM nor did Plaintiff refuse to assume any post or assignment.

101.    Plaintiff was nonetheless instructed to write a report as to why Plaintiff "refused" to take meal and not on what really transpired which was Defendants Jones' ulterior motive to make it seem that Plaintiff had been insubordinate.

102.    On or about December 31st, 2020, Defendant Miller # 1654 on behalf of Captain Edwards #1675 ordered the Plaintiff to write a report detailing her response to Defendant Jones #1428 on December 30th, 2020.

103.    On or about December 31st, 2020 Plaintiff emailed Equal Employment Opportunity Attorney Investigator Triana Graciela kindly requesting to be temporarily assigned to the Central Bookings B- post; as she believed that it would be beneficial to her and would limit her interactions with Defendant Jones who persisted in her discrimination and retaliation against the Plaintiff.

104.     On or about January 4ᵗʰ, 2021, Attorney Investigator Triana Graciela responded to the Plaintiff via email stating: "I have reached out to Defendant Jones regarding your request. Please follow up with her regarding your request. If she needs to speak with me, please have her call the Office or she can email me."

105.     Plaintiff then responded to Attorney Investigator Triana Graciela "I am reaching out to you in order to get clarification regarding your response, did you mean that I should follow up with Administration Supervisor Captain Edwards. As Defendant Tanya Jones is the DEFENDANT."

106.     Attorney Investigator Triana Graciela then stated: "Yes, please follow up with Captain Edwards. I sent her an email regarding your request. Thank you."

107.     Plaintiff also submitted a formal request to Executive Officer Julien Mario as well as to Administration Supervisor Captain Edwards requesting to please be temporarily assigned to the central bookings B- post; stating: "as I believe that it will be beneficial to me as it limits my interactions with Defendant Jones."

108.     Captain Edwards and Executive Officer Julien Mario then notified Plaintiff that on the days that Defendant Jones was assigned to Operations that Plaintiff would be placed on the Central Bookings B- Post.

109.     In or around January 4ᵗʰ – 5ᵗʰ, 2021 Plaintiff was ordered by Queens Detention Complex Executive Officer Julien Mario to submit a report in detail describing the Work Place Violence that occurred on December 30ᵗʰ, 2020 with Defendant Tanya Jones.  Plaintiff submitted the ordered report.

110.     On or about January 5ᵗʰ,2021, Plaintiff submitted to Attorney Investigator Triana Graciela further retaliation complaints due to actions by Officer Williams P # 2437, Defendant Maldonado #10219 and Defendant Molina #15935.

111.     In fact, Defendant Molina started a petition in order to have Union Delegate Officer Schnirring removed from her delegate position for rendering Plaintiff Union assistance at the Queens Detention Complex.

112.     This petition against Officer Schnirring was orchestrated in an effort to intimidate Plaintiff and inhibit her from having any union representation.

113.     On or about January 5th, 2021 at approximately 8:40 PM, Plaintiff was approached by Control room Officer Vanessa Hammond, Shield # 2008, and stated: **"[w]hy did you put an EEO complaint against Defendant Jones.  You need to stop. Things will get better around here eventually".** It was obvious to Plaintiff that Defendant Jones had relayed confidential information to Vanessa Hammond regarding the ongoing complaint and investigation.

114.     On or about January 8, 2021, at approximately 3:00 PM, Plaintiff had a Workplace Violence meeting with Patricia Feeney Deputy Commissioner of Quality Assurance & Integrity, along with Executive Director of Labor Relations Maria Guccione, among other ranking members of service.

115.     This meeting was regarding the violence that occurred on December 30th, 2020. In the meeting Plaintiff was interviewed and her testimony regarding the incident of December 30th, 2020, with Defendant Jones was recorded.

116.     After this meeting, Defendant Jones was aware that Plaintiff had just returned from the meeting about the workplace violence incident. Instead of having Plaintiff assume her assigned sanitation post, Defendant Jones removed Plaintiff from her post and had Plaintiff assume a different post.

117.     On or about January 20th, 2021, Operation Supervisor Defendant Jones allowed Defendant Maldonado, Shield # 10219, to order the Plaintiff to conduct a

meal relief.

118.     Defendant Maldonado is not allowed to order the Plaintiff to conduct or perform any duty within the Command as she is of the same ranking position as Plaintiff.

119.     On this day there were four other members of service without a post who were available to conduct the meal relief.

120.     On or about January 20th, 2021, at approximately 7:30 PM, an inmate flooded the annex area as Plaintiff was having lunch in the cafeteria when Defendant Jones stated: **"Let that stupid Spanish girl clean it up she has sanitation,"** referring to the Plaintiff.

121.     On or about January 21, 2021, at approximately 9:00 PM Operation Supervisor Defendant Jones removed the Plaintiff from her steadily assigned post and assigned her to the Central Bookings C post in order to further harass the Plaintiff.

122.     Plaintiff's post is a "floating post" where one can freely move around the building and Defendant Jones purposely placed Plaintiff in a fixed and rigid post where Plaintiff has no mobility and more responsibilities.

123.     Plaintiff was awarded her original and steady sanitation post on paper and is not supposed to be removed from said assigned post unless there is an emergency situation.

124.     On several occasions Plaintiff has overheard Defendant Jones have conversations with other members of the service, telling them that Plaintiff submitted an EEO complaint against her.

125.     Defendants Jones has frequently commented to Plaintiff that: **"Your work husband is going to be late again so you do all the work until he gets here."**

Defendant Jones has said this on numerous occasions inside the Queens detention Center kitchen area.

126.     On one such occasion, Corrections Officer King, Shield # 9710 stated to Plaintiff that she was **"a punk"** for cleaning.

127.     On or about September 6, 2021, Plaintiff was denied a personal emergency day.

128.     Yet, Plaintiff had not requested a personal day in over 8 years.

129.     Defendants retaliated and discriminated against the Plaintiff for filing a protected complaint.

130.     Due to Defendant Jones' discrimination, Plaintiff was ridiculed by other members of the Service who took pictures of Plaintiff while she was conducting the Sanitation of the flood while laughing and commenting on how Plaintiff was a punk for conducting the sanitation ordered by Defendant Jones.

131.     Since the commencement of this suit, Plaintiff has been subject to numerous retaliatory actions as a result of Defendant Jones' scandalmongering about the filed EEO complaint.

132.     Similarly, Officer Geddes Boucher # 10795 who is steadily assigned to 352 Sanitation/ Food Service and who works in conjunction with Plaintiff's sanitation post, refuses to work with Plaintiff after Defendant Jones took him inside her locker room and made him privy to the filed EEO complaint.

133.     The above demonstrates how Defendants' actions have tarnished the Plaintiff's reputation in her career.

134.     The above actions by Defendants qualify as an adverse employment action.

135.    Defendants' actions caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

136.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress.

137.    As a result of the acts and conduct complained of herein, Plaintiff has suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

138.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

**AS A FIRST AND SECOND CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

139.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

140.    Title VII states in relevant part as follows:

   a.  Employer practices:

   b.  It shall be an unlawful employment practice for an employer:

      i.  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

141.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition

19

against discrimination in employment based, in whole or in part, upon an employee's race and gender.

142.       Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein on account of Plaintiff's race and gender.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

143. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

144. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

    c.   "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

145.       Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

146.       Executive Law § 296 provides that it shall be an unlawful discriminatory practice:

    d.   "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

147.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

148.     Defendants engaged in unlawful discriminatory practice by discriminating, harassing and creating a hostile work environment against the Plaintiff because of her race, and gender.

149.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FIFTH CAUSE OF ACTION
FOR DISCRIMINATION
UNDER STATE  LAW**

150.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

151.     New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

   e.   "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

152.     Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION
FOR DISCRIMINATION
UNDER STATE LAW**

153.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

154.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

f. "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

155.     Defendants engaged in an unlawful discriminatory practice by, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

156.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

157.     The Administrative Code of City of NY § 8-107 [1] provides that:

"It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

158.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

159.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at

length.

160.       The New York City Administrative Code Title 8, §8-107(l)(e) provides

that it shall be unlawful discriminatory practice: "For an employer... to discharge ...

<u>or otherwise discriminate</u> against any person because such person has opposed any

practices forbidden under this chapter..."

161.       Each of the Defendants engaged in an unlawful discriminatory practice

in violation of New York City Administrative Code Title 8, §8-107(l)(e) by

discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful

employment practices of Plaintiff's employer.

## <u>AS A NINTH CAUSE OF ACTION FOR</u><br><u>DISCRIMINATION UNDER THE</u><br><u>NEW YORK CITY ADMINISTRATIVE CODE</u><br><u>(Not Against Individual Defendants)</u>

162.       Plaintiff repeats, reiterates and realleges each and every allegation made

in the above paragraphs of this Complaint as if more fully set forth herein at length.

163.       New York City Administrative Code Title 8-107(19):

It shall be an unlawful discriminatory practice for any person to
coerce, intimidate, threaten or interfere with, or attempt to coerce,
intimidate, threaten or interfere with, any person in the exercise or
enjoyment of, or on account of his or her having aided or encouraged
any other person in the exercise or enjoyment of, any right granted
or protected pursuant to this section.

164.       Defendants violated the section cited herein as set forth.

## <u>AS A TENTH CAUSE OF ACTION FOR</u><br><u>DISCRIMINATION UNDER THE</u><br><u>NEW YORK CITY ADMINISTRATIVE CODE</u><br><u>(Not Against Individual Defendants)</u>

165.      Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

166.      The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

167.      Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS AN ELEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER THE
NEW YORK CITY ADMINISTRATIVE CODE
(Not Against Individual Defendants)**

168.      Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

169.      New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another

24

employee or agent who exercised managerial or supervisory responsibility; or (3)the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

170.            Defendants violated the section cited herein as set forth.


**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
          October 20, 2021

                                                    **L & D LAW, P.C**
                                                    ***(Liggieri & Dunisha)***

                                                    By: _____/s/_____
                                                        Paul Liggieri, Esq.
                                                    11 Broadway, Suite 615
                                                    New York, NY 10004